## No. 6397.

### JAMES STAFFORD vs. W. P. HARPER, SHERIFF, ET AL.

### JAMES M. WEYMOUTH vs. W. P. HARPER, SHERIFF, ET AL.

An Appeal shall not be dismissed because documents *offered* but not *introduced* in evidence by the Appellee, have not been transcribed in the Record.

The late Second District Court for the Parish of Orleans had jurisdiction of probate causes in which the amount in dispute exceeded five hundred dollars. The limitation to that amount applied, under the then existing laws, only to the parish courts in the country parishes.

The principal and surety should be sued, when legally practicable, in the same action.

APPEAL from the Fifth District Court, parish of Orleans. *Cullom, J.*

James B. Guthrie and T. A. Bartlette for Plaintiffs and Appellees.

W. S. Benedict for Defendant and Appellant.

Stafford vs. Harper. Sheriff, et al.

### On Motion to Dismiss Appeal.

The opinion of the Court was delivered by

Todd, J. This motion is made by the plaintiff and appellee on grounds substantially as follows :

That he (plaintiff) had offered in evidence on the trial of the cause in the court below certain records pertaining to proceedings in another case, which records were not copied into the transcript.

The record discloses that this evidence was offered by the plaintiff, but was not produced and filed by him during or after the trial. It was his duty to have done so. The appellant endeavored by a writ of *certiorari* to supply this missing evidence, but plaintiff complains that it has not been done in the return made to this writ, and upon this claims the right to have the appeal dismissed. We do not see that the appellant is in fault. On the contrary, the omission complained of is directly attributable to the appellee himself, and as was well said by this Court in a case presenting a similar state of fact, "it would be unjust to permit him, appellee, to derive any advantage from a state of things he was instrumental in producing. 4 A. 276. See, also, 13 L. 82 ; 4 R. 325 ; 10 R. 387 ; 1 A. 40, 276.

The absence of this evidence compels us to remand the case.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be set aside, and that this case be remanded to the lower court for a new trial, and to be proceeded with according to law, appellee to pay costs of appeal.

### On Rehearing.

The opinion of the Court was delivered by

Bermudez, C. J. The plaintiff and appellee has moved the dismissal of the appeal herein, on the ground of the incompleteness of the transcript.

He complains that certain documents and proceedings, which he mentions, and which, he says, were offered in evidence by him, are not included in the transcript.

We declined to dismiss the appeal, and, with a view to afford him an opportunity to introduce and file in evidence the documents and proceedings which appear to have been *offered*, we reversed the judgment of the lower court and remanded the case.

With the decree so made, the plaintiff found fault, claiming that the only order that could have been made, would have been, either to sustain the motion and dismiss the appeal, or to overrule the motion and permit a trial on the merits on the transcript as it stands.

A rehearing was properly granted him. Since then, on defendant's application, an order, in the nature of a *certiorari*, was issued to the

clerk of the lower court to complete the transcript. The return of that officer, who is the same who certified the transcript as containing " all the proceedings had, all the testimony and evidence adduced, and all the documents filed " in the case, shows that he and his deputies have taken pains to ascertain in what respect the transcript is deficient, and that unable to do so, he confirms his previous attestation, with the statement that no document whatever was filed other than those embraced in the transcript.

The clerk had a right to justify himself in this manner.

From the note of evidence, it appears that the plaintiff has *offered* in evidence a " record (in the lower court), and all proceedings (in the case stated), the writs of *fieri facias* issued therein, the provisional seizure, the return of the sheriff thereon, and all orders of the court rendered in that suit, and, in connection with that, also all papers and documents in the sheriff's office, books, etc., or connected therewith ; " but it does not appear from the entry that the plaintiff was allowed to *introduce* the same in evidence. One thing it is to *offer*, and another to *introduce*, evidence. Either litigant can *offer*, but it is not until after the offer has been made and not resisted, or permitted, that the evidence is *introduced*, and that the documents are filed. Even if the terms were convertible, it does not appear that the plaintiff has produced and caused to be *filed* the evidence offered.

Litigants, by such loose practice and entries on the note of evidence, have no right to expect that the court of the first instance will undertake to ascertain what was or not offered or introduced in evidence, either by searching for records in the clerk's office or inspecting " papers, documents or books in the sheriff's office." Neither can they expect from the clerks, who are ministerial officers only, who have no judgment to exercise, that they will assume the responsibility of determining what was or not offered or introduced in evidence.

It is not enough for parties to *offer*, they should *introduce*, in evidence. The *offer* precedes the *introduction*, with which the filing must be simultaneous. Litigants who introduce written evidence offered, should produce it and then *see* that it is properly noted and filed. 6 A. 162 ; 7 A. 65 ; 30 A. 833. The court has no authority in determining cases to consider, as in evidence, documents not introduced and not described and filed. Clerks have no right to include in a transcript such evidence which was not produced and filed. The entries in this case are quite irregular.

If the transcript be incomplete, it is so by the fault of the appellees and not by that of the appellant. We are at a loss to see how the appellee himself, under the note of evidence in the record, could force

the clerk of the lower court to include in the transcript the documents to which he refers as not embraced in it.

The previous decree herein is rescinded.

It is now ordered that the motion to dismiss the appeal be overruled with costs.

## On the Merits.

This is a suit in damages against a sheriff and his deputies for alleged tortious acts. The action was brought in this city before a court of ordinary jurisdiction.

The record does not show whether Harper, the sheriff, was living at the institution of the suit. No citation appears to have been served upon, or even issued to, him.

One of the sureties, R. E. Rivers, was reached by the process of the court.

The widow of Harper, in her capacity as executrix of the will of her husband, and Rivers appeared, denying any liability, and asked to be dismissed with costs.

The case was tried, and a judgment was rendered in favor of the plaintiff for a portion of his claim. From such judgment the executrix and surety have appealed.

The former claims here that the lower court had no jurisdiction over the case, as a suit on a money claim against a succession is a *probate* matter : the latter insists here that no recovery can be had against him, *unless* the property of the principal shall have been discussed.

### I.

If Harper was dead at the institution of this suit, the Fifth District Court had no jurisdiction over the matter. C. P. 164, 924, 986 ; Art. 83. Const. of 1868. If he died since the institution of the suit, the case should have been transferred to the court having jurisdiction of the settlement of the succession. 3 N. S. 522 ; 11 L. 360 ; 3 R. 92 ; 13 L. 378 ; 5 R. 2 ; 6 R. 44 ; 6 A. 793 ; 4 A. 248.

The plaintiff's reply is unwholesome, that the Fifth District Court had jurisdiction because the suit is for three thousand ($3000) dollars, and that the jurisdiction of probate courts on claims of money brought against succession representatives is limited to suits in which the amount involved does not exceed five hundred ($500) dollars. In support of that theory he points to articles C. P. 986 and 924, § 13, which do not justify it.

By reference to the Code of Practice, such as it existed prior to the adoption of the Constitution of 1868, it will be seen that the first article refers to the institution of suits on unliquidated money claims

for whatever amount before the court of probates, and that the paragraph of the article last referred to, contains *no* restriction as to the amount.

The words "*or before the district court, according to the amount involved,*" found in article 986 of the present Code of Practice, and the *proviso* found in the 13th paragraph of article 924 of the same present Code, are innovations inserted in the Code of Practice, as revised in 1870, in furtherance of the constitution and the laws then in force.

By article 87 of that constitution, parish courts for the country parishes were created. They were vested with probate powers. They were to have no jurisdiction in a suit in which the amount claimed was over five hundred ($500) dollars, even where a succession was a party. Acts of 1868, p. 60 ; C. P. 127, 128, 454; 21 A. 478, 610, 616 ; 22 A. 81, 101, 593 ; 24 A. 127, 206, 288 ; 27 A. 411, 366.

By article 83 of that constitution, district courts were created for the parish of Orleans. The Second District Court was clothed with exclusive probate powers ; the other district courts, among which the Fifth, were to have exclusive jurisdiction over all civil cases, *except probate,* so that the Second District Court had *exclusive probate,* and the other courts had *exclusive civil,* jurisdiction. The Second Court could not exercise *civil,* and the other courts could not exercise *probate* jurisdiction.

Both the parish courts and and the Second District Court were, therefore, vested with *probate* jurisdiction. The limitation of their powers as to amounts claimed, applied exclusively to the parish courts, and in no manner to the Second District Court, touching which there was special constitutional and statutory provision, and which was to be ruled and governed by the law as it previously stood, unimpaired as it was by the Constitution of 1868. The restrictions found in the Code of Practice as to amounts apply to the parish courts only. C. P. 164 ; Ballen vs. Andrews, 10 L. 218 ; Smith vs. Adams, 14 A. 409 ; State vs. Judge, 20 A. 466 : Champlin vs Bakewell, 21 A. 354 ; Lauve vs. Van Horn, 25 A. 446 ; Succession of Haggerty, 28 A. 87 ; Boutte's case, 30 A. 181 ; and authorities herein before just quoted.

The Fifth District Court had, therefore, no jurisdiction over the case, in so far as the succession of Harper is concerned. The question of jurisdiction was not raised below. It is here presented. We could notice it *proprio motu.*

II.

Whatever may be the rights of the surety, Rivers, under section 354, of the Revised Statutes, which he invokes as shielding him, and which provides that no sale of the property of sureties shall be made until the property of the principal shall be discussed, it cannot be insisted upon absolutely that, under the circumstances of this case, the

surety cannot be sued and that, on an executory judgment, his property cannot be levied upon to satisfy it.

It is not always and under any circumstance that the property of the principal can be required to be first discussed by the creditor of both principal and surety. R. C. C. 3046, 3047; 27 A. 324; 29 A. 843; 30 A. 486; Pothier, Obl. 410.

The principal and surety, in a case like this, can, and should be, when practicable, legally sued in one and the same action, as the claim springs from the same source and the parties are bound to the same extent, the surety having less means of defense, however, than the principal. R. C. C. 3211, 2098, 3060; Troplong, Cont. p. 435, No. 494; p. 417, No. 470.

The lower court had jurisdiction over the suit as concerns the defendant, Rivers, who could not be sued before the probate court, and the defense made by him in this court is inadmissible under the pleadings and the circumstances of the case.

### III.

We have looked into the record attentively to ascertain whether justice can be done to the parties, and find it in such condition that we cannot now udertake that responsibility. The interests of all concerned can be better protected and served by a *new trial* of the issues between them.

As the only certain date we have of Harper's death is that of the appearance of his widow as executrix, we will not dismiss the suit as to his succession. The Second and Fifth District Courts for the parish of Orleans having ceased to exist, and being replaced by the Civil District Court for the same parish, the case, both as to Harper's succession and as to defendant Rivers, must be referred for another trial to the last named court.

It is, therefore, ordered, adjudged and decreed that the judgment of the lower court be reversed, that this case be remanded to be further proceeded with by the Civil District Court for the parish of Orleans; plaintiff to pay costs in both courts from the filing of the answers in the case.